IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID CROSS                        )

                                 )

      Plaintiff,                )       CIVIL ACTION

                                 )       FILE NO.:

v.                             )

                                 )

ASHBOROUGH CONDOMINIUM    )

ASSOCIATION, INC., DELLA NELSON,   )

YASHICA ROBINSON, VIVIAN BRANDT,  )

and KEVIN KNOWLES           )

                                 )

      Defendants.             )

## COMPLAINT

COMES NOW David Cross (hereinafter "Plaintiff") Plaintiff in the above-styled matter, and files this, his Complaint against Defendants Ashborough Condominium Association, Inc. (hereinafter "the Association"), Della Nelson (hereinafter "Nelson"), Yashica Robinson (hereinafter "Robinson"), Vivian Brandt (hereinafter "Brandt"), and Kevin Knowles (hereinafter "Knowles"), and respectfully shows the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff David Cross is a resident of Cobb County, Georgia, who resides at 5011 Sunbrook Way, NW, Acworth, Georgia 30101.

2.

Defendant Ashborough Condominium Association, Inc. is a domestic corporation, registered and licensed to do business in the State of Georgia. Defendant may be served through its registered agent: Vivian Brandt, 1810 Ashborough Circle, Marietta, Georgia 30067.

3.

Defendant Della Nelson is a resident of Cobb County, Georgia, who may be served at 3464 Donamire Chase NW, Kennesaw, Georgia 30144.

4.

Defendant Yashica Robinson is a resident of Cobb County, Georgia, who resides and may be served at 1197 Ashborough Drive D, Marietta, Georgia 30067.

5.

Defendant Vivian Brandt is a resident of Cobb County, Georgia, who resides at 1813 Ashborough Circle F, Marietta, Georgia 30067.

6.

Defendant Kevin Knowles is a resident of Bartow County, Georgia, who resides and may be served at 215 Gaston Westbrook Ave, Emerson, Georgia 30137.

7.

This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant to the Fair Labor Standards Act, 29 U.S.C. §2617. Supplemental jurisdiction over Plaintiff's claims arising under Georgia law is proper pursuant to 28 U.S.C. §1367, because Plaintiff's state law claims form part of the same case or controversy as his federal claim under Article III of the United States Constitution.

8.

This Court has personal jurisdiction over the Defendants because they transact business and/or reside in the Northern District of Georgia.

9.

Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) and (c) because Defendants are subject to personal jurisdiction in the Northern District of Georgia.

## STATEMENT OF FACTS

10.

Plaintiff began working for Ashborough Condominium Association, Inc. on or around June 29, 2011.

11.

Plaintiff was employed as a maintenance worker by the Association.

12.

During the time that Plaintiff was employed by the Association, Defendant Association was an "enterprise engaged in commerce" as defined in 29 U.S.C. §§ 203(s) and 207(a)(1).

13.

During the time that Plaintiff was employed by the Association, Defendant Association had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

14.

During the time that Plaintiff was employed by the Association, Defendant Association had two or more "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," as defined in 29 U.S.C. § 203(s)(1)(A).

15.

During the time that Plaintiff was employed by the Association, the Association's annual dollar volume exceeded $500,000.00 per year.

16.

During the time that Plaintiff was employed by the Association, Defendant Association vested Defendant Vivian Brandt and Defendant Della Nelson with supervisory authority over Plaintiff.

17.

During the time that Plaintiff was employed by the Association, Defendant Brandt and Defendant Nelson exercised supervisory authority over Plaintiff.

18.

During the time that Plaintiff was employed by the Association, Defendant Brandt and Defendant Nelson scheduled Plaintiff's working hours or supervised the scheduling of Plaintiff's working hours.

19.

During the time that Plaintiff was employed by the Association, Defendant Brandt and Defendant Nelson exercised authority and supervision over Plaintiff's compensation.

20.

At all times relevant to this suit and while employed by the Association, Plaintiff was not exempt from the maximum hour requirements of the FLSA by reason of any exemption set forth in 29 U.S.C. § 213.

21.

Plaintiff initially earned $10.00 per hour when hired.

22.

Plaintiff's position consisted of performing maintenance and repair work for residences and common areas within the Association, while also ensuring that the Association remained in compliance with federal and state laws.

23.

Based on his exceptional work, Plaintiff was awarded a merit raise from $10.00 per hour to $12.00 per hour on July 11, 2011.

24.

Plaintiff subsequently left employment with the Association in March 2012. However, due to his value to the Association, a merit raise to $15.00 per hour was offered on March 12, 2012, enticing Plaintiff to return to his employment with the Association.

25.

Plaintiff was, again, awarded a merit raise to $18.00 per hour on January 1, 2014.

26.

Plaintiff frequently worked more than forty (40) hours per week while employed by the Association.

27.

On or around July 2012, during the exterior repair to the "1200 Building," Plaintiff worked more than one hundred (100) hours of overtime to ensure the timely and proper completion of the project.

28.

During these one hundred (100) plus hours of overtime worked, Plaintiff was paid only his regular wage of what was, at the time, $15.00 per hour.

29.

Plaintiff's overtime wage should have been $22.50 per hour.

30.

Plaintiff was, therefore, deprived of approximately $750.00 in overtime wages owed to him from the overtime worked on the "1200 Building."

31.

On another occasion, during an ice storm in or around January 2014, Plaintiff provided much needed repairs for residents of the Association.

32.

While fixing frozen pipes throughout the Association, Plaintiff worked over 20 hours of overtime.

33.

Plaintiff was not paid regular wages or overtime wages for the twenty (20) plus hours of overtime worked.

34.

At the time of the ice storm, in or around January 2014, Plaintiff's regular wage was $18.00 per hour.

35.

Plaintiff's overtime wage would have been $27.00 per hour.

36.

Accordingly, Plaintiff was deprived of at least $540.00 in overtime wages owed to him under federal law for the twenty (20) plus hours worked during the ice storm.  Plaintiff also worked additional overtime hours which will be substantiated through discovery in this matter.

37.

Defendant Vivian Brandt, property manager of the Association, knew that Plaintiff was owed overtime and knowingly failed to pay same.

38.

The occasions described in Paragraph 26 through Paragraph 37 are only examples of withholdings of overtime owed to Plaintiff by the Association. Overtime wages were frequently unpaid to Plaintiff during his three (3) years with the Association. The full extent of the Association's violation of federal law will be revealed throughout the course of discovery in this lawsuit.

39.

Additionally, Plaintiff had eight and a half (8.5) days remaining in PTO and vacation that he has not been paid for by the Association.

40.

Accordingly, Plaintiff is owed $1,124.00 in unpaid, accrued PTO and vacation pay.

41.

Della Nelson is a board member of the Association and knew that Plaintiff was owed overtime and knowingly failed to pay same.

42.

Ms. Nelson began overseeing the maintenance team and other personnel of the Association, which is when the events leading to Plaintiff's termination began.

43.

On numerous occasions, Defendant Nelson told individuals that she wanted to "change the complexion" of the maintenance team of the Association.

44.

Defendant Nelson helped her friend, Kevin Knowles, an unqualified African-American, get hired to the maintenance staff.

45.

Plaintiff, a Caucasian male who had worked for the Association for three years prior to Mr. Knowles's hiring, was eventually terminated.

46.

Defendant Nelson, Defendant Yashica Robinson, a board member of the Association, and Defendant Vivian Brandt, the Association's Property Manager and Registered Agent, took calculated and unlawful steps that eventually led to the termination of Plaintiff.

47.

Since Plaintiff started employment with the Association, no employee had ever been "written up" for any employment issue.

48.

Since Defendant Nelson began her campaign to "change the complexion" of the maintenance team, Plaintiff was the target of several false and improper write ups.

49.

Regarding Plaintiff's first write up, Defendant Nelson accused Plaintiff of not being on the property of the Association during work hours and wrote Plaintiff up for same, when, in fact, Plaintiff was performing repair work on-site in the condo unit of resident Jeanette Tillman.

50.

Despite Plaintiff's request that Defendant Nelson confirm with Ms. Tillman that Plaintiff was performing repair work for her, Defendant Nelson refused and wrote Plaintiff up anyway.

51.

Additionally, Defendant Nelson wrote Plaintiff up for insubordination when he attempted to explain that he was in fact at work and performing repairs in Ms. Tillman's home.

52.

Subsequently, Ms. Tillman attended a board meeting of the Association to speak on behalf of Plaintiff. Ms. Tillman was instructed to sit down and was not permitted to speak.

53.

During another occasion, Plaintiff was written up for performing his essential job duties.

54.

Plaintiff was tending to a sink leak in the clubhouse bar. He discovered that the wrong type of pipe was being used, violating building codes, and Plaintiff fixed the issue to bring the condo into compliance with applicable building codes.

55.

Plaintiff was written up for doing work he was not expressly authorized to perform, despite the fact that he was performing job duties assigned to him as had been the normal course of dealing.

56.

Moreover, on or about August 8, 2014, Defendant and Property Manager, Vivian Brandt, instructed Defendant Kevin Knowles and another employee to inventory the tools in the workshop.

57.

After the inventory, Defendant Brandt escorted Plaintiff to the workshop and accusatorily requested that Plaintiff point out where numerous tools were located. Upon each request, Plaintiff pointed out the location of the tools in the workshop.

58.

Plaintiff suggested that Defendant Brandt review the list of requested tools with Defendant Knowles and the other employee who prepared the inventory list.

59.

Suddenly and for reasons unbeknownst to Plaintiff, Defendant Knowles became irate at this suggestion and attempted his attack on Plaintiff.

60.

Fearing for his safety, Plaintiff fled the scene.

61.

Despite the fact that Defendant Knowles initiated the violent and aggressive confrontation, Plaintiff was the employee written up and subsequently terminated on August 8, 2014.

62.

During Plaintiff's tenure with the association, he supplied his own trucks and many of his own tools for Association use.

63.

Plaintiff frequently supplied use of his personal boom truck to perform work at elevated levels.

64.

Plaintiff also supplied use of his personal work truck that he used in furtherance of Association business on a daily basis.

65.

The Association benefited from the use of Plaintiff's trucks.

66.

For most of his tenure with the Association, Plaintiff received no compensation for gas, oil changes, upkeep, or devaluation of these trucks regularly used for Association purposes.

67.

During the last six months of his tenure with the Association, Plaintiff was finally given an Association credit card to pay for gas.

68.

Plaintiff was never compensated for the use of his tools used in furtherance of Association business, though a former maintenance member had been compensated for the use of his tools when working for the Association.

69.

If Plaintiff had not supplied his personal trucks and tools, the Association would have had to purchase or rent similar trucks and tools to accomplish the necessary work of the Association.   To the extent the Association would like to claim tool and truck rental was a component of Plaintiff's wages, then Plaintiff has not been paid federally mandated minimum wages.

70.

During and after Plaintiff's employment with the Association, Defendant Nelson made false and slanderous statements about Plaintiff.

71.

Plaintiff has received letters from members of the community about these slanderous remarks.

72.

Other board members and personnel of the Association also made slanderous remarks about Plaintiff.

73.

Defendant Nelson informed Ms. Tillman that Plaintiff was terminated for walking off the job and for informing residents that he would perform jobs but then failing to do so.

74.

Defendant Nelson's statements to Ms. Tillman are baseless and false.

75.

Plaintiff anticipates the discovery of many similar slanderous remarks to individuals and possibly prospective employers of Plaintiff during this case.

76.

Plaintiff has been damaged by Defendants' continued attacks on his character, work ethic, and reputation.

**COUNT ONE – Violation of 29 U.S.C. § 207 (Fair Labor Standards Act)**

77.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

78.

On numerous occasions, Plaintiff worked in excess of forty (40) hours in a standard work week.

79.

Defendants were aware of, permitted, and often required Plaintiff's overtime work.

80.

For every hour worked in excess of forty (40) hours, Plaintiff was entitled to one and one-half times the regular rate at which he was employed, pursuant to 29 U.S.C. § 207(a)(2).

81.

Defendant Ashborough Condominium Association, Inc. willfully failed to pay Plaintiff at one and one-half times his regular rate of pay and, instead, paid him only his regular rate of pay for hours worked in excess of forty (40) per week.

82.

The Association failed to pay Plaintiff at all for some overtime worked.

83.

Defendant Vivian Brandt, property manager of the Association, and Defendant Della Nelson, who oversaw the maintenance and personnel of the Association, knew that Plaintiff was owed overtime and knowingly failed to pay Plaintiff overtime in accordance with Federal law.

83.

Defendants Association, Brandt, and Nelson are each liable to Plaintiff for the failure to pay Plaintiff overtime pursuant to the Fair Labor Standards Act.

84.

Such failure to pay overtime wages in violation of the Fair Labor Standards Act damaged Plaintiff in an amount to be proven at trial on this matter, and Plaintiff is entitled to Liquidated Damages, attorneys' fees, and expenses in accordance with 29 U.S. Code § 216(b).

**COUNT TWO – Tortious Interference With Business Relations**

85.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

86.

Plaintiff had an ongoing business relationship with the Association, relating to his continued employment.

87.

Defendants Nelson, Robinson, and Brandt acted improperly and wrongfully in impugning Plaintiff's work ethic, falsely representing that he was not fulfilling his job duties, and writing Plaintiff up for baseless reasons.

88.

The Defendants acted purposefully with malice and the intent to injure Plaintiff's business relationship with the Association.

89.

The Defendants' actions resulted in the termination of Plaintiff's employment and business relationship with the Association.

90.

Plaintiff was damaged as a result of Defendants Nelson's, Robinson's, and Brandt's tortious interference with Plaintiff's business relationship with the Association in an amount to be determined at trial.

## COUNT THREE - Civil Conspiracy

91.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

92.

Defendants Nelson, Robinson, and Brandt knowingly and purposefully conspired to tortuously interfere with Plaintiff's employment and business relationship with the Association in furtherance of Defendant Nelson's agenda of "changing the complexion" of the Association's personnel and maintenance team.

93.

Plaintiff was damaged by this civil conspiracy and tortious interference in an amount to be determined at trial.

**COUNT FOUR – Intentional Infliction of Emotional Distress**

94.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

95.

Defendants' actions of maliciously and falsely impugning Plaintiff's character, work ethic, and reputation, as well as baselessly disciplining and terminating Plaintiff's employment, constitute intentional misconduct.

96.

Defendants' actions in pursuing such a malicious, unfounded, and illegal course of action show a specific intent to cause harm.

97.

Even after Plaintiff's employment was terminated, Defendants continued their campaign of smearing Plaintiff's reputation in the local community.

98.

A reasonable person would find Defendants' behavior extreme and outrageous.

99.

As a result of Defendants' action, Plaintiff has suffered severe emotional distress justifying an award of damages in an amount to be determined at trial.

## COUNT FIVE – Unjust Enrichment

100.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

101.

While working for the Association, Plaintiff supplied two of his own vehicles, including a "boom truck" and a work truck, as well as his personal tools.

102.

For two and a half years of Plaintiff's employment with the Association, he was not reimbursed for gas, mileage, repairs, upkeep, or devaluation of his personal vehicles, nor was Plaintiff compensated for the use of his personal tools.

103.

The Association benefited from the use of Plaintiff's personal vehicles and tools.

104.

Without the use of Plaintiff's vehicles and tools, the Association would have had to purchase or rent comparable vehicles and tools to aid in the performing of necessary tasks for the Association's benefit.

105.

For each and every day that Plaintiff supplied his personal vehicles and tools and was not reimbursed or compensated for gas, mileage, upkeep, use, and devaluation, the Association was unjustly enriched.

106.

Plaintiff has suffered damages related to the Association's unjust enrichment in an amount to be proven at trial in this matter.

## COUNT SIX - Quantum Meruit

107.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

108.

Plaintiff provided valuable services to the Association by the use of his personal trucks and tools.

109.

The Association accepted the use of Plaintiff's personal trucks and tools for their benefit.

110.

The failure to compensate Plaintiff would be unjust.

111.

Plaintiff expected to be compensated for the use of his personal trucks and tools and has been damaged thereby.

## COUNT SEVEN – Slander and Defamation *Per Se*

112.

Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76.

113.

Defendant Nelson falsely and maliciously defamed Plaintiff and his character during and after his tenure with the Association.

114.

Other board members and personnel of the Association also made false and malicious comments regarding Plaintiff's character, work ethic, and reputation.

115.

Defendants' false statements include attacks related to Plaintiff's profession, trade, and work ethic.  These statements are defamatory *per se*.

116.

Because of Defendants' defamatory statements, including but not limited to statements grossly misstating the circumstances surrounding Plaintiff's dismissal, Plaintiff's reputation has suffered.  Plaintiff has suffered public hatred, contempt, and ridicule.

117.

Defendants' statements have damaged Plaintiff in an amount to be proven at the trial of this matter.

## COUNT EIGHT – Assault

118.

Plaintiff repeats and reallages each and every allegation set forth in Paragraphs 1 through 76.

119.

Defendant Knowles violently confronted Plaintiff in the workshop while identifying the inventoried tools on or about August 8, 2014.

120.

Defendant Knowles' actions were meant to intentionally cause Plaintiff fear and apprehension of imminent bodily harm.

121.

Plaintiff was actually put into fear for his safety.

122.

Defendant Knowles' actions would have placed a reasonable person in fear of immediate bodily harm.

123.

Defendant Knowles' actions have damaged Plaintiff in an amount to be proven at the trial of this matter.

## COUNT NINE – Negligent Hiring

124.

Plaintiff repeats and reallages each and every allegation set forth in Paragraphs 1 through 76.

125.

Upon information and belief, Defendant Knowles has a criminal background that includes violent felony convictions.

126.

Upon information and belief, the Association did not perform a background check before hiring Defendant Knowles for a maintenance position that permitted him into homes of residents and working in close proximity with others such as Plaintiff.

127.

Defendant Knowles assaulted Plaintiff in the workshop of the Association for personal reasons unknown to Plaintiff.

128.

The assault could have been foreseen by Defendants as a natural and probable consequence of hiring Defendant Knowles, had the Association performed an adequate background check.

129.

Plaintiff would not have been exposed to Defendant Knowles's tortious actions had the Association performed adequate background checks.

130.

Defendants' negligent hiring of Defendant Knowles has damaged Plaintiff in an amount to be proven at trial in this matter.

## COUNT TEN – Liquidated Damages/Punitive Damages

### 131.

Plaintiff repeats and reallages each and every allegation set forth in Paragraphs 1 through 130.

### 132.

Pursuant to 29 U.S. Code § 216(b), Plaintiff is entitled to Liquidated Damages in an amount double the unpaid overtime wages to be proven at trial in accordance with the Fair Labor Standards Act.

### 133.

Pursuant to O.C.G.A. § 51-12-5.1, Punitive Damages are appropriate in this action so as to penalize and punish Defendants for their willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Further, Plaintiff is entitled to an award of punitive damages to deter Defendants from any such further conduct.

## COUNT ELEVEN – Attorney's Fees

### 134.

Plaintiff repeats and reallages each and every allegation set forth in Paragraphs 1 through 130.

135.

Pursuant to 29 U.S. Code § 216(b) and O.C.G.A. § 13-6-11, Plaintiff is entitled to collection of his attorney's fees and expenses of litigation for all claims brought herein premised upon Defendants' bath faith, stubbornly litigious behavior, and intentional misconduct.

**WHEREFORE**, Plaintiff demands the following:

(a) That process issue and the Defendants be served according to law;

(b) That Plaintiff be granted a trial by jury;

(c) That judgment be entered against Defendants for Plaintiff's compensatory, general, and special damages as alleged and as otherwise permitted under federal and state laws;

(d) That Plaintiff be awarded pre-judgment interest;

(e) That liquidated damages be awarded to Plaintiff for three years of unpaid overtime in accordance with the Fair Labor Standards Act;

(f) That Plaintiff recover his attorney's fees, costs, and expenses of litigation pursuant to 29 U.S. Code § 216(b) and O.C.G.A. § 13-6-11;

(g) That punitive damages be assessed against Defendant in an amount to be determined by the enlightened conscience of an impartial jury; and for

(h) Such other and further relief as this Court deems just and proper.

Respectfully submitted, this _17th_ day of October, 2014.

MOORE INGRAM JOHNSON & STEELE, LLP

Jeffrey A. Daxe, Esq.
Ga. Bar No.  213701

Attorney for Plaintiff

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
770-429-1499
jad@mijs.com